UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON TINSLEY,

                              Petitioner,

            - against -

R.K. WOODS, Superintendent, Upstate Correctional
Facility,

                              Respondent(s).

08 Civ. 1332 (VB) (PED)

**REPORT AND
RECOMMENDATION**

TO:   THE HONORABLE VINCENT L. BRICCETTI,
      UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Jason Tinsley ("Petitioner") seeks, by his *pro se* petition, a writ of *habeas corpus*

pursuant to 28 U.S.C. § 2254, from his July 20, 2004 conviction entered in Westchester County

Court (Zambelli, J.). Petitioner was convicted, upon a plea of guilty, of one count of

manslaughter in the first degree and sentenced, *inter alia*, to a determinate term of sixteen years

imprisonment plus five years of post-release supervision.[1] This petition comes before me

pursuant to an Order of Reference dated February 20, 2008 (Docket No. 2), which was

subsequently reassigned to me on January 12, 2009 (Docket No. 16). For the reasons set forth

below, I respectfully recommend that this petition be **DENIED**.

## II. BACKGROUND[2]

---

[1] Petitioner also pled guilty to one count of criminal sale of a controlled substance in the third degree and was sentenced to a concurrent term of four and one-half to nine years imprisonment. Because this petition concerns the manslaughter conviction only, I do not address the facts or procedural history related to the narcotics offense.

[2] Unless otherwise indicated, the information contained within this section is taken from Respondent's appellate brief (hereinafter "Br. for Resp't") (attached to Resp't Mem. of Law & Resp't App. (hereinafter "Resp't Mem."), at Ex. 5 (Docket No. 8)), Petitioner's appellate brief

A.     **The Crime and Pretrial Proceedings**

The relevant facts of the underlying criminal offense and related proceedings may be briefly summarized.  On July 27, 2003, at approximately 3:00 a.m., William Upshaw ("Upshaw") was shot in the chest at point blank range in the City of Peekskill, New York. Upshaw died from his injuries.  An eyewitness to the crime later identified Petitioner as the shooter.

On August 7, 2003, Petitioner was indicted on one count each of murder in the second degree, manslaughter in the first degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree.

Petitioner's counsel moved by pretrial omnibus motion to, among other things, suppress evidence and identification testimony, and to preclude the State from introducing evidence of Petitioner's prior criminal history.  After pretrial hearings were held, the court denied Petitioner's suppression motion and ruled that at least one of his prior offenses would be admissible.

B.     **The Guilty Plea**

At a proceeding held on May 17, 2004, Petitioner's counsel informed the court that pursuant to a plea bargain, his client would enter a plea of guilty to the charge of manslaughter in the first degree in full satisfaction of the indictment.  Petitioner informed the court that he understood that his guilty plea would result in a determinate sentence of sixteen years imprisonment plus five years of post-release supervision.  (May 17, 2004 Tr., at 55-56, 60 (Ex.

_____

(hereinafter "Br. of Def.-Appellant") (attached to Resp't Mem., at Ex. 4), and Respondent's Affirmation in Opposition to Petition for Writ of Habeas Corpus (hereinafter "Resp't Aff.") (Docket No. 7).  All exhibits cited herein are attached to Resp't Mem. (Docket No. 8).

1)).  Petitioner was then placed under oath and stated, among other things, that it was his

decision to plead guilty; that he understood he had a right to remain silent, a right to a trial by

jury or to a trial by judge, a right to require the State to prove each element of any offense

beyond a reasonable doubt, a right to cross-examine and confront witnesses, a right to present

witnesses and to testify himself in his own defense, and a right to appeal his conviction and

sentence; that it was his decision to waive those rights and plead guilty; that no one threatened or

coerced him into pleading guilty; that no promises or representations, other than those related to

the terms of the plea bargain, had been made to him; that he was pleading guilty freely and

voluntarily; that he was pleading guilty because he was guilty; and that he was a second felony

offender.  (Id. at 57-64).  The court placed on the record the promised sentence of sixteen years

plus five years post-release supervision.  (Id. at 60).  Petitioner then pled guilty to manslaughter

in the first degree, in violation of N.Y. Penal Law § 125.20(1),[3] and admitted that, on July 27,

2003 in the City of Peekskill, New York, with the intent to seriously injure Upshaw, he caused

Upshaw's death by shooting him.  (Id. at 64-65).  The court accepted Petitioner's plea and

allocution.  (Id. at 69).

## C.    The Sentencing

On July 20, 2004, Petitioner appeared for sentencing.  (See July 20, 2004 Tr. (Ex. 3)).  At

this point, the parties acknowledged that Petitioner had stated during his pre-sentence interview

that he was innocent of the manslaughter charge.  (Id. at 4, 8-9; see also Ex. 17 (pre-sentence

report)).  Specifically, Petitioner's attorney stated:

---

[3] "A person is guilty of manslaughter in the first degree when . . . [w]ith intent to cause
serious physical injury to another person, he causes the death of such person or of a third
person."  N.Y. Penal Law § 125.20(1).

3

I have had a conversation with my client in the back because I was perturbed by what I had read in the [pre-sentence] report.  In the report he had told the presentence officer that he was not involved in the case.  I explained to him the possible consequences of what might happen today.  And just for the record, my client had asked me to try to withdraw his guilty plea and to proceed to trial, knowing full well the consequences should he be found guilty.  However, I believe that application most likely will be denied by your Honor and we will be proceeding to the sentencing portion.

(July 20, 2004 Tr., at 8-9).  Counsel also later stated, "I know that [my client] fully allocuted when he pled guilty." (Id. at 10).  In response to this revelation, the court gave Petitioner an opportunity to speak, but Petitioner declined to say anything.[4]  (Id.)  The court thereafter sentenced Petitioner to sixteen years imprisonment plus five years post-release supervision in accordance with the plea bargain.  (Id. at 11).

## D.   **Direct Appeal**

Petitioner, through his appellate counsel,[5] appealed his conviction to the New York State Appellate Division, Second Department, and raised the following claims:

(1)   his plea was not knowingly, voluntarily, and intelligently entered;
(2)   the court erred by not conducting a further inquiry prior to imposing sentence;
(3)   he received ineffective assistance of counsel due to counsel's failure to move to withdraw the guilty plea; and
(4)   he received ineffective assistance of counsel when counsel acted as a witness against Petitioner by stating that he knew his client had fully allocuted during his plea.

---

[4] Specifically, the dialogue included the following:

| | |
|---|---|
| THE COURT: | Thank you.  All right, Mr. Tinsley, what do you have to say? |
| DEFENDANT: | (No response.) |
| THE COURT: | Mr. Tinsley. |
| DEFENDANT: | Nothing. |
| THE COURT: | Nothing? |

(July 20, 2004 Tr., at 10).  At this point, members of the victim's family began to speak from the well of the courtroom.  After they had quieted, the court imposed the sentence.  (Id. at 11).

[5] Petitioner was represented by different counsel on appeal.

4

(See Br. of Def.-Appellant, at 13-23).  The Second Department affirmed the judgment in a written decision on August 8, 2006.  People v. Tinsley, 820 N.Y.S.2d 305 (App. Div. 2006).  Petitioner then sought leave to appeal to the New York Court of Appeals, and leave was denied on September 29, 2006.  People v. Tinsley, 7 N.Y.3d 852 (2006).  Petitioner did not seek a writ of *certiorari* to the United States Supreme Court nor has he pursued state collateral relief.  (See Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, at 3-4 (hereinafter "Pet.") (Docket No. 1)).

E.    ***Habeas Corpus* Proceedings**

By petition dated December 4, 2007, Petitioner filed for a writ of *habeas corpus* raising the following claims:[6]

(1)    his plea was not knowingly, voluntarily, and intelligently entered;
(2)    he received ineffective assistance of counsel due to counsel's failure to move to withdraw the guilty plea; and
(3)    he received ineffective assistance of counsel because his attorney previously represented Upshaw.

(See Pet., at 7-8).  After Respondent filed its opposition papers, Petitioner sought and was granted additional time to submit a reply.  (Docket No. 18).  Although more than two years have passed, no reply has been filed.  I therefore treat the matter as fully submitted.[7]

## III. DISCUSSION

A.    **Applicable Law**

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614,

---

[6] The petition was timely filed.  See 28 U.S.C. § 2244(d)(1)-(2).

[7] Accordingly, where appropriate, I incorporate the arguments raised in Petitioner's appellate brief.

5

621 (1998) (citing <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994)). Before a federal district court may

review the merits of a state criminal judgment in a *habeas corpus* action, the court must first

determine whether the petitioner has complied with the procedural requirements set forth in 28

U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claim(s) in

accordance with § 2254(d). The procedural and substantive standards applicable to *habeas*

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized

below.

    1.    *<u>Timeliness Requirement</u>*

    A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of

limitations. <u>See</u> 28 U.S.C. § 2244(d). The statute provides four different potential starting

points for the limitations period, and specifies that the latest of these shall apply. <u>See</u> <u>id.</u> §

2244(d)(1). Under the statute, the limitation period is tolled only during the pendency of a

properly filed application for State post-conviction relief, or other collateral review, with respect

to the judgment to be challenged by the petition. <u>See</u> <u>id.</u> § 2244(d)(2). The statute reads as

follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court. The
> limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct
> > review or the expiration of the time for seeking such review;
> > (B) the date on which the impediment to filing an application created by
> > State action in violation of the Constitution or laws of the United States is
> > removed, if the applicant was prevented from filing by such State action;
> > (C) the date on which the constitutional right asserted was initially
> > recognized by the Supreme Court, if the right has been newly recognized by

the Supreme Court and made retroactively applicable to cases on collateral
review; or
(D) the date on which the factual predicate of the claim or claims presented
could have been discovered through the exercise of due diligence.

(d)(2) The time during which a properly filed application for State post-conviction
or other collateral review with respect to the pertinent judgment or claim is pending
shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a
petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some
extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida,
130 S. Ct. 2549, 2262 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  In the
Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v.
McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have
"prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129,
134 (2d Cir. 2000) (internal quotation marks and emphasis omitted).  The applicant for equitable
tolling must "demonstrate a causal relationship between the extraordinary circumstances on
which the claim for equitable tolling rests and the lateness of his filing – a demonstration that
cannot be made if the petitioner, acting with reasonable diligence, could have filed on time
notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 134.

2.  ***Exhaustion Requirement***

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his
claims in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. §
2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the

7

applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an

absence of available corrective process; or (ii) circumstances exist that render such process

ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be

deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented"). The

exhaustion requirement promotes interests in comity and federalism by demanding that state

courts have the first opportunity to decide a petitioner's claim. Rose v. Lundy, 455 U.S. 509,

518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each

appropriate state court (including a state supreme court with powers of discretionary review),

thereby alerting that court to the federal nature of the claim," and thus "giving the State the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin

v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because

non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas

petition must put state courts on notice that they are to decide federal constitutional claims."

Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209,

221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the

factual and legal premises of the federal claims ultimately asserted in the habeas petition."

Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be

"fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and

verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b)
> reliance on state cases employing constitutional analysis in like fact situations, (c)
> assertion of the claim in terms so particular as to call to mind a specific right

8

protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court. See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also, e.g., Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

3.     ***Procedural Default***

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it.  Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law.  Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Colman, 501 U.S. at 740).  A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question."  Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

### 4.    *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas* relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims.  28 U.S.C. § 2254(d)(1)-(2).  This statute "modifie[d] the role of federal habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review.  Williams v. Taylor, 529 U.S. 362, 402 (2000).  For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

> Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).   The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment.  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." Williams, 529 U.S. at 413.  A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct.  28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.**   **Analysis of Petitioner's Claims**

    **1.**   ***Guilty Plea***

Petitioner asserts that his "conviction was obtained by plea of guilty[, which] was unlawfully induced or not made voluntary with understanding of the nature of the charge and consequence of the plea." (Pet., at 7).  He states that "my lawyer told me to plead guilty because

11

things weren't looking good.  During the pre sentence report writing by the probation department I explained I was innocent & only plead guilty because of my lawyer." (Id.)  Respondent contends that this claim is procedurally barred and, in any event, without merit.  (See Resp't Mem., at 4–9).

It is clear from the Second Department's written decision that it actually relied upon a state procedural rule in denying this claim.[8]  While the court went on to deny the claim on the merits, the court's reliance on the procedural rule constitutes an independent ground for its decision.  See Harris, 489 U.S. at 264 n.10 (state court decision that relies on state procedural rule to dismiss claim, but which, in the alternative, also proceeds to dismiss claim on the merits, relies on the independent state law ground for dismissal); see also Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 n.4 (2d Cir. 2000) (noting that when a state court opines that a claim is "not preserved for appellate review" and then rules "in any event" that the claim also fails on its merits, the decision rests on an adequate and independent state law basis which precludes federal habeas review).

---

[8] The opinion reads in pertinent part:

The defendant failed to preserve his contention that his pleas of guilty were invalid (see People v. Clarke, 93 N.Y.2d 904, 905 [1999]; People v. Pellegrino, 60 N.Y.2d 636, 637 [1983]; People v. Thomas, 691 N.Y.S.2d 792 [1999]).  In any event, the record demonstrates that the defendant's pleas of guilty were knowing, voluntary, and intelligent . . . .

The defendant's contention that, in light of his assertions of innocence in the presentence investigation report, the court should have conducted a further inquiry before imposing sentence is unpreserved for appellate review (see People v. Pellegrino, supra; People v. Steed, 519 N.Y.S.2d 373 [1987].  In any event, the defendant's post-plea assertions of innocence do not warrant vacating his pleas . . . .

Tinsley, 820 N.Y.S.2d at 305 (parallel citations omitted).  The cases cited by the court identify the pertinent procedural rule.

Specifically, the Second Department's decision relied on New York State's requirement that a challenge to the validity of a guilty plea must be preserved for appellate review by first seeking in the trial court to withdraw the plea[9] or to vacate the judgment of conviction.[10] Tinsley, 820 N.Y.S.2d at 305.  It is well-settled in New York that such challenges must be preserved in this manner, and state courts regularly follow this rule in denying claims. See, e.g., Garcia v. Boucaud, 2011 WL 1794626, at *3 (S.D.N.Y. May 11, 2011) (internal citation omitted) ("Treating a failure to withdraw a plea as a procedural default is well-established in the New York courts. . . . [T]he Court of Appeals [has] noted [in] its prior holdings that in order to preserve a challenge to the factual sufficiency of a plea allocution there must have been a motion to withdraw the plea under [N.Y. Crim. Proc. Law] § 220.60(3) or a motion to vacate the judgment of conviction under [N.Y. Crim. Proc. Law] § 440.10.  Numerous New York courts, including federal courts on habeas review, have applied that rule in rejecting challenges to the sufficiency of guilty pleas as . . . procedurally barred.");[11] Hunter v. McLaughlin, 2008 WL 482848, at *3 (S.D.N.Y. Feb. 21, 2008) (collecting cases and determining that "[t]here is ample case law holding that a defendant must notify the trial court of his request to withdraw a guilty

---

[9]

> At any time before the imposition of sentence, the court in its discretion may permit a defendant who has entered a plea of guilty to the entire indictment or to part of the indictment, or a plea of not responsible by reason of mental disease or defect, to withdraw such plea, and in such event the entire indictment, as it existed at the time of the plea, is restored.

N.Y. Crim. Proc. Law § 220.60(3).

[10] At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment . . . ."  N.Y. Crim. Proc. Law § 440.10(1).

[11] Copies of unreported cases cited herein will be mailed to Petitioner.  See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

13

plea on a specific basis in order to preserve that issue for appeal"); Anaya v. Brown, 2006 WL

2524079, at *7-8 (S.D.N.Y. Sept. 1, 2006) (collecting cases and determining that "New York

case law clearly indicates that [petitioner] was required to present his failure-to-inquire claim to

the trial court in the first instance if he wanted to preserve it for appellate review").[12]

Accordingly, in denying this claim, the state court relied on an adequate procedural bar that

precludes federal review.[13]

    Within his petition, Petitioner makes a separate claim of ineffective assistance of trial

counsel for counsel's failure to move to withdraw the plea.  I liberally construe this claim to also

allege cause for Petitioner's procedural default.  (See Pet. at 8); see also Haines v. Kemer, 404

---

[12] In particular I note that in denying this claim as unpreserved, the Second Department
cited a case nearly identical to Petitioner's:

> Following the determination of the motion to suppress, the defendant pleaded
> guilty to manslaughter in the first degree and admitted that, with intent to cause
> serious physical injury, he had caused the death of the victim by shooting him with
> a gun.  Thereafter, during the preparation of the presentence report, the defendant
> apparently denied that he had actually fired the fatal shot.  However, at the time of
> the sentencing, the defendant did not move to withdraw his plea or otherwise renew
> his purported claim of innocence.  Thus, the defendant's contention that the court
> should have made further inquiry regarding his belated denial of guilt and given him
> an opportunity to move to withdraw his plea is not preserved for appellate review .
> . . .

People v. Steed, 519 N.Y.S.2d 373, 373 (App. Div. 1987).

[13] I also note that while New York recognizes a narrow exception to this rule, the Second
Department determined that it did not apply in Petitioner's case.  In People v. Lopez, the New
York Court of Appeals held that "where a defendant's factual recitation negates an essential
element of the crime pleaded to, the court may not accept the plea without making further
inquiry to ensure that defendant understands the nature of the charge and that the plea is
intelligently entered."  People v. Lopez, 71 N.Y.2d 662, 666 (1988).  Failure to make further
inquiry will enable a defendant to challenge the validity of his plea on direct appeal regardless of
whether a motion to vacate or withdraw was made.  Here, the Second Department specifically
cited Lopez in denying Petitioner's claim.  Tinsely, 820 N.Y.S. 2d at 305.

U.S. 519, 520-21 (1972) (per curiam) (*pro se* allegations contained in *habeas corpus* petitions

should be liberally construed); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal

quotation marks and citation omitted) (application submitted by *pro se* petitioner should be "read

liberally and should be interpreted to raise the strongest arguments that [it] suggests").

However, as discussed below, because I find that counsel was not ineffective, Petitioner cannot

establish cause, and accordingly the instant claim must be denied as procedurally barred.

### 2.     *Ineffective Assistance of Counsel for Failure to Move to Vacate Guilty Plea*

Petitioner argues that he was denied the right to the effective assistance of trial counsel

due to counsel's failure to move to vacate his guilty plea. (See Pet., at 8; see also Br. for Def.-

Appellant, at 19). Respondent contends that the state court's denial of this claim was neither

contrary to, nor an unreasonable application of, clearly established federal law. (See Resp't

Mem., at 10-14).

The Counsel Clause of the Sixth Amendment of the United States Constitution provides

that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his

defense." U.S. Const. Amend. VI. The Supreme Court has construed this clause to afford

criminal defendants the right to the *effective* assistance of counsel. See McMann v. Richardson,

397 U.S. 759, 771 n.14 (1970). A petitioner's ineffective assistance of counsel claim will

succeed on the merits if the petitioner proves (1) that counsel's representations "fell below an

objective standard of reasonableness," as measured under "prevailing professional norms,"

Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different," id. at 694.

*Habeas* petitioners bear the burden of proving both prongs of the Strickland test. He or

15

she must therefore prove that his or her attorney's actions were objectively unreasonable as well as that he or she was prejudiced to the extent that there exists a reasonable probability that the result of the proceeding would have been different. Strickland, 466 U.S. at 689, 693.  To show that an attorney's conduct was unreasonable, the petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  Additionally, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.  Because a petitioner may succeed only by proving both Strickland prongs, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

It is "absolutely clear that the choice to plead guilty must be the defendant's." Henderson v. Morgan, 426 U.S. 637, 650 (1976).  However, there is no constitutional right to withdraw a constitutionally valid guilty plea.  See United States v. Williams, 23 F.3d 629, 634 (2d Cir. 1994).  "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).  A plea is knowingly entered when the defendant has the "understanding of the nature of the charge and the consequences of the plea." Santobello v. New York, 404 U.S. 257, 261 n.1 (1971) (internal quotation omitted)).  A plea is voluntarily entered when the defendant is competent to proceed, has "an awareness" of the true nature of the charges against him, and has a "rational as well as factual understanding of the proceedings against him."

16

Oyague v. Artuz, 393 F.3d 99, 106 (2d Cir. 2004) (internal citations omitted).

In this case, even if counsel's failure to support Petitioner's desire to withdraw his guilty plea is deemed deficient conduct, Petitioner fails the second prong of Strickland. Petitioner cannot establish that, had his attorney made a motion to withdraw the guilty plea, the motion would have been granted. Under New York law, "[t]he decision to permit withdrawal of a guilty plea is a matter within the trial court's sound discretion, and a hearing is required only where the record presents a genuine question of fact as to its voluntariness." People v. Shovah, 889 N.Y.S.2d 717, 718 (App. Div. 2009), lv. denied, 14 N.Y.3d 773 (2010) (internal quotation omitted); see also N.Y. Crim. Proc. Law § 220.60(3). "Absent showing that defendant's plea was baseless, the Judge to whom the motion is addressed must be entitled to rely on the record to ascertain whether any promises, representations, implications and the like were made to the defendant." People v. Frederick, 45 N.Y.2d 520, 525 (1978). "Generally, a plea may not be withdrawn unless there is some evidence of innocence, fraud or mistake in its inducement." People v. Carmona, 887 N.Y.S.2d 370, 372 (App. Div. 2009), lv. denied, 14 N.Y.3d 799 (2010). "Furthermore, where a defendant has been fully informed of the rights he or she is waiving by pleading guilty and proceeds to admit to acts constituting the crime, a subsequent protestation of innocence which is not substantiated by any evidence is generally insufficient to support a request for vacatur of the plea." Shovah, 889 N.Y.S.2d at 718 (internal quotation omitted).

In this case, "[n]othing in the record of the plea allocution called into question the voluntary, knowing and intelligent nature of defendant's bargained-for plea." Carmona, 887 N.Y.S.2d at 372 (internal quotation omitted). The court engaged in a detailed plea colloquy where Petitioner stated he discussed his options with his attorney, he was satisfied with his attorney's representation, he understood his rights and those he would waive by pleading guilty,

17

he understood the charges against him, he was not threatened or coerced by anyone into pleading guilty, he wanted to plead guilty because he was in fact guilty, he was clear in his mind, and he understood the potential maximum sentence the court could impose. (See May 17, 2004 Tr., at 56-65). In addition, Petitioner admitted to shooting Upshaw with the intent to cause serious physical injury. (Id. at 65). The sentencing court would therefore have been entitled to rely on this record to determine that the plea was knowingly and voluntarily entered, and to deny any motion to withdraw. Petitioner's later, unsubstantiated protestation of innocence contradicting this record would have been insufficient to warrant a different result. Furthermore, Petitioner's instant contention that he pled guilty because his lawyer informed him of the likelihood of conviction after trial does not require a different outcome. See, e.g., Carmona, 887 N.Y.S.2d at 372 (no grounds to grant motion to withdraw guilty plea where counsel advised defendant "as to the strengths and weaknesses" of the case); People v. Marcano, 495 N.Y.S.2d 419, 420-21 (App. Div. 1985) (same). Accordingly, in denying this claim, the state court did not unreasonably apply Strickland.

### 3. *Ineffective Assistance of Counsel Due to Conflict of Interest*

Finally, Petitioner asserts that he was deprived of his right to counsel because his attorney previously represented Upshaw in another matter. (Pet., at 8). Respondent contends that this claim is unexhausted and, in any event, meritless. (See Resp't Mem., at 14-15).

While Petitioner did raise a conflict of interest claim on direct appeal, that claim is different from what is now alleged in the *habeas* petition. (Compare Pet., at 8, with Br. of Def.-Appellant, at 13-23). On direct appeal, Petitioner argued that counsel acted as a witness against Petitioner by asserting that he knew Petitioner had fully allocuted at the plea. Petitioner never mentioned in his appellate brief that counsel previously represented the victim. Because

18

Petitioner has not raised this claim in any state court proceeding, it remains unexhausted.

However, Petitioner is not procedurally barred from seeking to exhaust the claim because it

contains a matter *dehors* the record.  Petitioner may still file a collateral motion to vacate the

judgment of his conviction on this basis.  Cf. N.Y. Crim. Proc. Law § 440.10(2)(c) (claims

adequately based in the record but not argued on direct appeal must be denied when raised in

post-conviction motion).  Nonetheless, because the claim is plainly meritless, it is appropriate to

deny it pursuant to 28 U.S.C. § 2254(b)(2).

   The Sixth Amendment right to counsel includes the right to conflict-free counsel.  See

Wood v. Georgia, 450 U.S. 261, 271 (1981); Strickland, 466 U.S. at 692.  An actual conflict of

interest exists where "during the course of the representation, the attorney and defendant's

interests 'diverge with respect to a material factual or legal issue or to a course of action.'"

Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993) (quoting Cuyler v. Sullivan, 446 U.S. 335, 356

n.3 (1980)).  Proof of an actual conflict of interest creates a presumption of prejudice, which

alleviates the defendant's burden of proving Strickland's second prong.  E.g., United States v.

White, 174 F.3d 290, 295 (2d Cir. 1999).  The defendant must show that some decision was

made because of the existence of the conflict.  However, the defendant need not also show that

this decision changed the result of the proceeding.  See Cuyler, 446 U.S. at 349, 350 ("until a

defendant shows that his counsel actively represented conflicting interests," or otherwise

engaged in a "lapse in representation," "he has not established the constitutional predicate for his

claim of ineffective assistance"); United States v. Malpiedi, 62 F.3d 465, 469 (2d Cir. 1995)

(internal quotation marks and citation omitted) ("a defendant must demonstrate that some

plausible alternative strategy or tactic might have been pursued, and that the alternative defense

was inherently in conflict with or not undertaken due to the attorney's other loyalties or

19

interests"). Actual conflicts require automatic reversal. See Cuyler, 446 U.S. at 349-50. In contrast, a potential conflict of interest requires proof of both Strickland prongs. See Winkler, 7 F.3d at 307.

In this case, Petitioner argues that a conflict existed when his attorney represented him after previously representing the victim, Upshaw. While the Supreme Court has recognized that an actual conflict exists where an attorney concurrently represents more than one defendant whose interests are conflicting, see Holloway v. Arkansas, 435 U.S. 475, 488 (1978), the Court has declined to extend the presumption of prejudice to matters involving an attorney's prior representations, see Mickens v. Taylor, 535 U.S. 162, 176 (2002). Accordingly, even if Petitioner's attorney did previously represent Upshaw, Petitioner cannot prevail on his instant *habeas* claim because he has not shown that this potential conflict caused an actual divergence of interests. See, e.g., Burger v. Kemp, 483 U.S. 776, 783 (1987) (quoting Strickland, 466 U.S. at 692) (where petitioner failed to call court's attention to potential conflict of interest at trial, petitioner may not prevail upon claim later unless he shows by a preponderance of evidence "that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance'"); Cuyler, 446 U.S. at 348 ("Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial. But unless the trial court fails to afford such an opportunity, a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel."); id. at 350 (the mere "possibility of conflict is insufficient to impugn a criminal conviction"); Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000) (petitioner does not satisfy burden of proof to show that potential conflict prejudiced him "by speculative

20

assertions of bias or prejudice" alone).  Accordingly, Petitioner's unsupported claim must be denied.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, I conclude – and respectfully recommend that Your Honor should conclude – that the petition be **DENIED**.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. <u>See</u> 28 U.S.C. § 2253(c); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, <u>see</u> Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Vincent L. Briccetti at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Briccetti.

Dated: June 16, 2011
      White Plains, New York

                                    Respectfully Submitted,

                                    Paul E. Davison
                                    United States Magistrate Judge
                                    Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

                The Honorable Vincent L. Briccetti
                United States Courthouse
                300 Quarropas Street
                White Plains, New York  10601

                Jason Tinsley, *pro se*
                04-A-4178
                Greenhaven Correctional Facility
                594 Rourt 216
                Stormville, NY 12582-0010

                John James Sergi, Esq.
                Office of the Westchester County District Attorney
                111 Dr. Martin Luther King, Jr. Blvd.
                White Plains, NY 10601